Filed 12/18/25  P. v. Wheeler CA4/2

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E083766 |
| v. | (Super.Ct.No. INF1402367) |
| WADE KLINTON WHEELER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Anthony R. Villalobos, Judge.  Affirmed.

Marta I Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Sahar Karimi, Deputy Attorneys General, for Plaintiff and Respondent.

Wade Klinton Wheeler appeals from the judgment entered after a jury found him guilty of vehicular manslaughter with gross negligence, and related offenses. On appeal, Wheeler contends that the trial court improperly coerced the deadlocked jurors by instructing them to continue deliberations. We disagree and affirm.

BACKGROUND

The People charged Wheeler and Scott Daniel Bahls by third amended information with the following offenses committed on June 18, 2013: one count of the second degree murder of Barbara Schmitz (Pen. Code, § 187, subd. (a); count 1); one count of vehicular manslaughter with gross negligence resulting in Barbara's death (*id.*, § 192, subd. (c)(1); count 2); one count of willfully engaging in a motor vehicle speed contest resulting in injuries to Gerald S. (Veh. Code, § 23109, subd. (a); count 3); and one count of reckless driving causing injuries to Gerald (*id.*, § 23105, subds. (a)-(b)). With respect to count 2 and count 3, the information alleged great bodily injury enhancements. (Pen. Code, §§ 12022.7, subd. (c), 1192.7, subd. (c)(8), 1192.8.)

Wheeler and Bahls's joint trial began in September 2016. The jury was empaneled on the sixth day of voir dire. Trial commenced on September 26, 2016. The People called 24 witnesses. The defendants called three witnesses and recalled two of the People's witnesses. Neither defendant testified. The trial lasted 16 days, with jury instructions and the start of deliberations on the 16th day, October 21, 2016.

The evidence introduced at trial showed that in the afternoon of June 18, 2013, Wheeler was driving a BMW that struck the passenger side of a Ford Focus driven by

Gerald. Barbara was in the front passenger seat. Gerald was critically injured, and the parties stipulated that Barbara died as a result of injuries caused by the collision.

The prosecution presented evidence that Wheeler struck the passenger side of Gerald's car as Gerald was making a left turn, causing Gerald's car to overturn and flip into the air. Prosecution witnesses testified that before the collision Wheeler was traveling at high speed, weaving in and out of traffic and apparently racing Bahls, who was also driving a BMW. Witnesses had seen Wheeler and Bahls at a stoplight gesturing at each other and then speeding away.

With respect to the reckless driving count (count 5), the jury was instructed on reckless driving causing serious injury and the lesser included offense of reckless driving. The jury commenced deliberations late in the afternoon on October 21, 2016, and left for the day about 20 minutes later. The jury resumed deliberations on the following Monday shortly after 9:00 a.m. and deliberated for three full days. The jury asked to have testimony read back to it and sent numerous questions to the court, including questions about the greater and lesser offenses of count 5. On the fourth full day of deliberations, the jury indicated in the early afternoon that it had reached a verdict. The jury gave the verdict forms to the court, and the court immediately held an in-chambers conference outside the jury's presence.

On the verdict forms for count 1 and count 5, the jury wrote, "'No decision.'" Counsel agreed that the court should ask the jury what it meant by the comment. The court asked the prosecutor if he would be requesting that the jurors continue deliberating

3

if they said that they were deadlocked. The prosecutor said that he would want continued deliberations for at least the remainder of the day, if not longer, and stated: "I believe there are instructions the Court can give if they are deadlocked and we move forward from there." Defense counsel submitted in response.

The foreperson subsequently told the court that the jury was deadlocked on count 1 and the greater and lesser offenses for count 5. The court asked whether further deliberation would be helpful, and the foreperson answered, "No. We've had several discussions of both charges, and we came to a deadlock on both—both charges." The foreperson did not believe that there was anything the court could do to help. He explained that the jury had reviewed all of the evidence, had discussions, and had taken several polls resulting in the same outcome.

In a subsequent conference outside the presence of the jury, the prosecutor asked the court to instruct the jury with CALCRIM No. 3551 and order the jury to deliberate further. Wheeler's counsel asked that the jurors be polled individually about whether they believed additional deliberation would be helpful, and the court granted the request. The court first asked the jury how it had numerically split for both counts and told them not to disclose which number represented guilt. The jury was split nine to three on count 1 and eight to four on count 5. Each of the 12 jurors stated that they believed they were hopelessly deadlocked and that further deliberations would not assist them.

At another conference outside the jury's presence, the prosecutor reiterated his request to instruct the jury with CALCRIM No. 3551 and to send them back to deliberate

further. The prosecutor emphasized that further deliberations were particularly warranted given the length and expense of the trial and that it was the first time that the jury claimed to be deadlocked. Wheeler's counsel commented, "Your Honor, I think they're a very thoughtful jury. They spent almost five days or four days in deliberation. I think they've made up their minds." The court noted that it did not have a sua sponte obligation to instruct the jury, and the prosecutor agreed but noted that he planned to retry at least count 1. The court asked defense counsel if they had anything further, and they said, "No." The court ruled that it would instruct the jury with CALCRIM No. 3551 and ask them to continue deliberating, "given it was a month-long trial" and the People would be retrying count 1.

The court instructed the jury with CALCRIM No. 3551 as follows: "Sometimes juries that have had difficulty reaching a verdict are able to resume deliberations and successfully reach a verdict on one or more counts. Please consider the following suggestions. [¶] Do not hesitate to reexamine your own views. Fair and effective jury deliberations require a frank and forthright exchange of views. [¶] Each of you must decide the case for yourself and form your own individual opinion after you have fully and completely considered all of the evidence with your fellow jurors. It is your duty as a juror to deliberate with the goal of reaching a verdict if you can do so without surrendering your individual judgment. Do not change your position just because it differs from that of the other jurors or just because you or others want to reach a verdict. The People and the defendants are entitled to individual judgment of each juror. [¶] It is

5

up to you to decide how to conduct your deliberations.  You may want to consider new approaches in order to get a fresh perspective.  [¶]  Let me know if I can do anything to help you further, such as give additional instructions or clarify instructions I may have already given you.  [¶]  Please continue your deliberations at this time.  If you wish to communicate with me further, please do so in writing using the forms my bailiff has given you."  (See also CALCRIM No. 3551.)

After giving CALCRIM No. 3551, the court told the jury:  "So ladies and gentlemen, just given the length of time we spent on this trial, I will send you back one further time.  If you're still deadlocked, just let me know.  But I will send you back one further time to see if this can be resolved.  If not, just let me know and we'll call you back at that time."  Defense counsel did not object to those remarks.

Twenty-five minutes into further deliberation, the jury sent two questions to the court.  As to count 5, the jury asked if it could render a verdict on the lesser included offense of reckless driving even if it did not reach a decision on the greater offense of reckless driving causing serious injuries.  The second question concerned the natural and probable consequences doctrine.

The court answered the first question by telling the jury that it was not permitted to reach a verdict on the lesser offense only.  The court then excused the jurors for the day but ordered them to return the next day.

6

The following morning, the court discussed the question concerning natural and probable consequences with the jury and the jury then resumed deliberations. The jury returned a verdict less than one hour later.

The jury remained deadlocked on count 1 as to both defendants, so the court declared a mistrial as to that count. The People reserved the right to retry that count. The jury found Wheeler guilty of the remaining three counts: vehicular manslaughter with gross negligence (count 2), a motor vehicle speed contest causing serious injury to Gerald (count 3), and reckless driving causing serious injury to Gerald (count 5). The jury also found true the great bodily injury enhancements alleged as to count 2 and count 3.

The retrial on the second degree murder count began in February 2024. Wheeler was tried separately. The second jury also deadlocked on the murder count. The trial court excused the jury, declared a mistrial, and subsequently granted Wheeler's motion to dismiss the count under Penal Code section 1385.

DISCUSSION

Wheeler's sole argument on appeal is that "the trial court prejudicially erred by improperly coercing the hopelessly deadlocked jury to further deliberate on the charges by instructing the jury with CALCRIM No. 3551 and impermissibly referencing the expense and inconvenience of retrial." (Boldface & capitalization omitted.) The People contend that Wheeler forfeited the argument by failing to object on those grounds below, and we agree. We also conclude that the argument lacks merit.

7

Penal Code section 1140 provides that absent consent of both parties "the jury cannot be discharged after the cause is submitted to them until they have agreed upon their verdict and rendered it in open court," unless "as the court may deem proper, it satisfactorily appears that there is no reasonable probability that the jury can agree." "'The decision whether to declare a hung jury or to order further deliberations rests in the trial court's sound discretion.'" (*People v. Brooks* (2017) 3 Cal.5th 1, 88 (*Brooks*).)

The trial court must exercise its discretion under Penal Code section 1140 "without coercing the jury." (*Brooks*, *supra*, 3 Cal.5th at p. 88.) "Whether a trial court has improperly coerced a jury is a separate, albeit related inquiry from whether the court abused its discretion under section 1140" of the Penal Code. (*People v. Thomas* (2023) 14 Cal.5th 327, 403.) Coercion occurs if "'the trial court, by insisting on further deliberations, expresse[s] an opinion that a verdict should be reached.'" (*People v. Peoples* (2016) 62 Cal.4th 718, 783 (*Peoples*).) "'"Although the court must take care to exercise its power without coercing the jury into abdicating its independent judgment in favor of considerations of compromise and expediency [citation], the court may direct further deliberations upon its reasonable conclusion that such direction would be perceived '"as a means of enabling the jurors to enhance their understanding of the case rather than as mere pressure to reach a verdict on the basis of matters already discussed and considered."'"'" (*Ibid.*; *Brooks*, at p. 88.) "Any claim that the jury was pressured into reaching a verdict depends on the particular circumstances of the case." (*People v. Pride* (1992) 3 Cal.4th 195, 265 (*Pride*).)

8

Wheeler's counsel opposed the request to order the jury to deliberate further, because "they're a very thoughtful jury," they had been deliberating for "almost five days or four days" already, and "they've made up their minds." Counsel did not say anything about coercion or articulate any objection to CALCRIM No. 3551. Wheeler's counsel also did not object when the trial court remarked that it was asking the jury to deliberate further because the trial was so long. Wheeler therefore has failed to preserve those issues for appeal. (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1037-1038; *People v. Neufer* (1994) 30 Cal.App.4th 244, 253-254.)

Wheeler contends that his counsel's remarks about the jury's thoughtfulness and that it appeared that the jury already decided the matter fairly apprised the trial court of the challenges that he now raises on appeal. We disagree. Nothing about those remarks suggested to the trial court that Wheeler's counsel believed that instructing the jury with CALCRIM No. 3551 would be coercive. And counsel's remarks were made outside the presence of the jury *before* the court even made the purportedly coercive remarks to the jury. That is not sufficient to preserve the argument being raised on appeal. (*People v. Saunders* (1993) 5 Cal.4th 580, 589-590.)

The argument fails on the merits in any event. There was no coercion. Wheeler emphasizes that the jurors deliberated for five days, asked numerous questions of the court, reached verdicts on two counts, and then informed the court that they were hopelessly deadlocked on count 1 and count 5. Wheeler argues that in that context "[a]ny reasonable jury would understand from the trial court's supplemental comments

9

regarding the lengthy trial and instruction to resume deliberations despite the jurors' clear communication of their belief that no further deliberations would help that they were forced to continue deliberations until unanimity was reached."

We disagree. Wheeler has not identified anything about the language in CALCRIM No. 3551 itself that "'displac[es] the jury's independent judgment "in favor of considerations of compromise and expediency"'" (*Brooks*, *supra*, 3 Cal.5th at p. 88) or otherwise expressed an opinion by the court that a verdict needed to be reached (*Peoples*, *supra*, 62 Cal.4th at p. 783). And the instruction is legally sound and not coercive. (*People v. Moore* (2002) 96 Cal.App.4th 1105, 1120-1121 (*Moore*) [concluding that the similar CALJIC instruction was not coercive].)

Moreover, the language of the instruction and the judge's remarks about the further deliberation confirm that the jury was not coerced. The trial court never told the jury that it "must reach a verdict" or placed any other constraints on deliberations. (*Pride*, *supra*, 3 Cal.4th at pp. 265-266.) Nor did the court "direct the jurors that 'the case must at some time be decided.'" (*Moore*, *supra*, 96 Cal.App.4th at p. 1121.) Rather, the court instructed the jurors that they should "not change your position just because it differs from that of the other jurors or just because you or others want to reach a verdict." (See CALCRIM No. 3551.) The court also instructed the jurors that it was their duty as jurors to deliberate with the goal of arriving at a verdict "if you can do so without surrendering your individual judgment." (See CALCRIM No. 3551.) And the court repeatedly told the jurors that if they remained deadlocked after further deliberations,

they should "just let [the court] know."  The instructions and the court's remarks thus left open the possibility that the jury could remain deadlocked and was not required to reach a verdict.  (*People v. Butler* (2009) 46 Cal.4th 847, 884 (*Butler*).)  "Nothing in the court's comments tended to dissuade any juror from maintaining his or her position."  (*Ibid.*)  "Nothing in the trial court's charge was designed to coerce the jury into returning a verdict."  (*Moore*, at p. 1121.)

Wheeler also contends that the trial court "impermissibly referenc[ed] the expense and inconvenience of retrial," arguing that such "repeated comments to the jury referencing the length of the trial" were "coercive when considered in this context" because they implied that "the jury must reach a verdict," given "the expense and inconvenience of retrial."  (Boldface and capitalization omitted.)  The argument is based on a false premise.  The trial court did not make repeated comments about the length of the trial but instead made a single comment after giving the jury CALCRIM No. 3551, explaining the jury was being sent back to deliberate "one further time" "given the length of time we spent on this trial."  The court did not say anything about whether a deadlock would result in retrial, let alone suggest that a retrial would be expensive or inconvenient. The court merely remarked on a fact of which the jury was already well aware:  The trial was long.  "The court made no reference to the subject of costs, the prospect of a retrial, or the desirability of a verdict."  (*Butler*, *supra*, 46 Cal.4th at p. 884.)  The "court's complete remarks [along with the giving of CALCRIM No. 3551] do not suggest that the

11

court crossed the line from encouragement to coercion." (*Peoples*, *supra*, 64 Cal.4th at p. 783.)

For these reasons, we conclude that the trial court did not coerce the jury to reach a verdict when it ordered the jury to continue deliberating on count 1 and count 5. Because we conclude that Wheeler's argument that the trial court coerced the jury fails on the merits, we also reject Wheeler's argument that his trial counsel rendered ineffective assistance by not objecting on that basis in the trial court. (*People v. Young* (2007) 156 Cal.App.4th 1165, 1171.)

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ_____<br>J.

We concur:

CODRINGTON_____
        Acting P. J.

RAPHAEL_____
        J.